```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

IN RE PROGRESS ENERGY, INC.              Master File No.
SECURITIES LITIGATION                    04 Civ. 0636 (JES)

------------------------------------X
THIS ORDER RELATES TO:                   MEMORANDUM OPINION
     ALL ACTIONS                              AND ORDER
------------------------------------X
```

**SPRIZZO, D.J.:**

Plaintiffs, members of a putative class of individuals who either received Contingent Value Obligations in connection with Florida Progress Corporation's ("Florida Progress") acquisition by Progress Energy, Inc. ("Progress" or "defendant"), or purchased such obligations on the public market between November 30, 2000 and February 13, 2002 ("class period"), bring this action to recover for securities fraud pursuant to sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5. Defendants, Progress and William Cavanaugh III ("defendants"), bring this motion to dismiss plaintiffs' Complaint for failure to state a claim, pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, and Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for failure to plead fraud with particularity, pursuant to Federal Rule of Civil Procedure 9(b). For the reasons set forth below, the Court grants defendants' motion.

## BACKGROUND

The following facts are culled from plaintiffs' Complaint and other documents which were incorporated into or integral to the Complaint. See Rombach v. Chang, 355 F.3d 164, 169 (2d Cir. 2004); I. Meyer Pincus & Assocs. v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir. 1991).

Beginning in June 1999 Progress and Florida Progress, two companies engaged in the utilities industry, entered into negotiations to consummate a merger. Am. Consol. Class Action Compl. ("Compl.") ¶¶

1

1, 20, 32. An agreement was reached in August 1999, id. ¶ 31, and on July 5, 2000, in connection with the proposed merger, the companies issued a proxy statement ("proxy") which set forth the terms of the proposed transaction, id. ¶ 34. The proxy indicated that each share of Florida Progress stock would be exchanged for $54 in cash or stock as well as one Contingent Value Obligation ("CVO"). Id. ¶¶ 32-33; Decl. of Terence J. Rasmussen, dated July 30, 2004, Ex. 3 ("Proxy Statement"), at 5.

The CVO's represented "the right to receive contingent payments based upon the net after-tax cash flow to [defendant] generated by" certain synthetic fuel plants operated by Progress. Proxy Statement at 35; Compl. ¶ 33. The contingent payments were to be "equal to 50% of the net after-tax cash flow generated by the [synthetic fuel plants] in excess of $80 million per year for each of the years 2001 through 2007," Proxy Statement at 35, 120; Compl. ¶ 35, as well as any payments thereafter associated with "carryforward credits," Proxy Statement at 121; Compl. ¶ 35, which were defined as "any [synthetic fuel credits] earned during an Operation Year and carried forward...as part of [defendant's] minimum tax credit (within the meaning of Section 53 of the Internal Revenue Code) and utilized in one or more tax years after 2007," Proxy Statement at 135.

The proxy contained an extensive list of factors that would impact the value of the CVO's including the applicability of synthetic fuel credits (as provided for in the Internal Revenue Code) to the synthetic fuel plants, the price and quantity of fuel sold, the cost incurred operating the plants, the amount of taxable income against which to use the synthetic fuel credits, the tax rates imposed on defendant, and the rates of inflation and interest. See id. at 23-24, 35-36; Compl. ¶¶ 38-41. Although the proxy contained estimates made by Salomon Smith Barney and Merrill Lynch which valued the CVO's at as high as $1.27 and

2

$1.71,[1] respectively, see Compl. ¶¶ 36-37; Proxy Statement at 54, 70, the proxy concluded that given the substantial number of uncertainties and risks "[i]t is possible that the contingent value obligations may never have any significant value," Proxy Statement at 5.

Shareholders from both corporations approved the merger in August 2000, Compl. ¶¶ 43-44, and the merger transaction closed on November 30 of that year, id. ¶ 45. Over ninety-eight million CVO's were issued to Florida Progress shareholders. Id.

On February 12 or 13, 2002, Progress held a teleconference for analysts which was available live to the public on the internet. See id. ¶ 48; Decl. of Terence J. Rasmussen, dated July 30, 2004, Ex. 7 ("Webcast Tr."), at 1-2. During the course of its presentation defendant revealed that, because of the operation of the alternative minimum tax ("AMT"), synthetic fuel credits earned from the operation of its synthetic fuel plants could not completely eliminate its income tax burden, and, in fact, could not reduce that liability below twenty percent. Compl. ¶ 48; Webcast Tr. at 48.

The CVO's, which had a fair market value of $0.545 on the closing date of the merger, see Pls.' Mem. at 6 n.2, declined in market price from $0.42 on the day preceding the teleconference, see id. at 6; Decl. of Terence J. Rasmussen, dated July 30, 2004, Ex. 8 ("Trading Info."), at 2, to $0.15 seven months later, see Pls.' Mem. at 20 n.14; Trading Info. at 10; Compl. ¶ 49. As of September 14, 2004, the date of the filing of plaintiffs' brief on this motion, sufficient revenue had not been generated to trigger any payments on the CVO's. See Pls.' Mem. at 5.

Two class action complaints were filed and, pursuant to a May 3, 2004 order, this Court consolidated these separate actions into this action and appointed PEAK6 Capital Management LLC as lead plaintiff.

---

[1] Although the Complaint cites Merrill Lynch's estimate of the value of the CVO's at $1.60 to $1.71, it fails to mention the preceding line, which, using different variables, valued each CVO between $0.24 and $1.64. Proxy Statement at 70.

3

Plaintiffs contend that defendants' failure to disclose the applicability of the AMT in the proxy and subsequent Quarterly Reports to CVO-holders was an omission of material fact that is actionable under sections 10(b) and 20(a) of the Securities Exchange Act of 1934 as well as Rule 10b-5. Compl. ¶¶ 40-42, 51-60.

## DISCUSSION

On a motion to dismiss, a court must accept all of the allegations set forth in the complaint as true, and must draw all reasonable inferences in favor of the plaintiffs. Rombach, 355 F.3d at 169; Halperin v. eBanker USA.COM, Inc., 295 F.3d 352, 356 (2d Cir. 2002). Dismissal is appropriate only when it is clear that the plaintiffs can prove no set of facts "in support of their claims that would entitle them to relief." Halperin, 295 F.3d at 356.

In order to state a claim under section 10(b) and Rule 10b-5, plaintiffs must allege that defendants "'(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury.'" Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172 (2d Cir. 2005) (quoting In re Int'l Bus. Machs. Corporate Sec. Litig., 163 F.3d 102, 106 (2d Cir. 1998)). Section 20(a) simply extends liability to those individuals who control section 10 violators. 15 U.S.C. § 78t(a).

When, as here, plaintiffs claim that defendants omitted material information, in order to state a claim the information that was allegedly omitted must have actually been omitted, see Debora v. WPP Group PLC, No. 91 Civ. 1775, 1994 WL 177291, at *5 (S.D.N.Y. May 5, 1994), the information must have been of a type which defendants had a duty to disclose, see In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 267 (2d Cir. 1993), and the omission of the information must have made statements that were made materially misleading, see 17 C.F.R. § 240.10b-5; see also Levitin v. PaineWebber, Inc., 159 F.3d 698, 702-04 (2d Cir. 1998); Donovan v. Am. Skandia Life Assurance Corp., No. 02 Civ. 9859, 2003 WL 21757260, at *2 (S.D.N.Y. July 31, 2003).

In this case, because plaintiffs fail to meet all of these requirements, this action must be dismissed.[2]

First, it is indisputable that there can be no omission where the allegedly omitted facts are disclosed. See Debora, 1994 WL 177291, at *5; see also In re Keyspan Corp. Sec. Litig., No. 01 Civ. 5852, 2003 WL 1702279, at *15-16 (E.D.N.Y. Mar. 21, 2003); White v. Melton, 757 F. Supp. 267, 272-73 (S.D.N.Y. 1991). Here, defendants disclosed in the proxy the limitations on the use of the synthetic fuel credits which were imposed by the Internal Revenue Code. Although the proxy did not mention the AMT by name, it directed investors to the relevant Internal Revenue Code provisions,[3] and it indicated that synthetic fuel credits that could not be used in a given year would be carried over to future years as part of defendants' "minimum tax credit." Proxy Statement at 135, 139. In addition, the proxy clearly disclosed that the value of the CVO's would be impacted by "the ability of [defendant] to utilize any tax credits generated by the [synthetic fuel] plants." Id. at 35. These disclosures were sufficient to notify a reasonable investor as to the nature and value of the CVO's. See Olkey v. Hyperion 1999 Term Trust, Inc., 98 F.3d 2, 5 (2d Cir. 1996).

Second, even if this disclosure was deemed inadequate, the information allegedly omitted here is not of the type which defendants had a duty to disclose. It is well-established law that the securities laws do not require disclosure of information that is publicly known, see Seibert v. Sperry Rand Corp., 586 F.2d 949, 952 (2d Cir. 1978); White v. H&R Block, Inc., No. 02 Civ. 2289, 2004 U.S. Dist. LEXIS 14522, at *15-16, 42 (S.D.N.Y. July 28, 2004), or which constitutes

---

[2] Given this determination, the Court need not consider defendants' multitude of additional rationales for dismissal, including, among other things, failure to plead scienter, see generally Kalnit v. Eichler, 264 F.3d 131, 138-39 (2d Cir. 2001), and loss causation, see generally Dura Pharms., Inc. v. Broudo, 125 S. Ct. 1627 (2005); Lentell, 396 F.3d at 173-77.

[3] Section 53 of the Internal Revenue Code, which is referred to in the proxy, Proxy Statement at 135, relates to the "[c]redit for prior year minimum tax liability" and it indicates that the "minimum tax" is provided for in section 55, I.R.C. § 53. Section 55 is entitled "Alternative minimum tax imposed." Id. § 55.

generally applicable laws and regulations, see Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 976-77 (9th Cir. 1999); Acme Propane, Inc. v. Tenexco, Inc., 844 F.2d 1317, 1323-24 (7th Cir. 1988); In re Keyspan Corp. Sec. Litig., 2003 WL 1702279, at *15-17.  In this case, the allegedly omitted information was a generally applicable tax provision that applies to all corporations. See I.R.C. § 55. Presumably, a myriad of other federal, state, and local laws and regulations would affect the ability of defendant to generate revenues and profits.  The federal securities laws simply do not require the excrutiatingly lengthy and complicated disclosure that would result if every indicia of the modern regulatory state needed to be compiled, catalogued, and explained to potential investors. See Wielgos v. Commonwealth Edison Co., 892 F.2d 509, 517 (7th Cir. 1989).

   Finally, even if it is assumed that defendants should have disclosed the existence of the AMT, it is simply not the case that the omission of this information made statements that were disclosed materially misleading. See Donovan, 2003 WL 21757260, at *2; 17 C.F.R. § 240.10b-5.  Plaintiffs contend that defendants' failure to disclose the AMT made misleading statements in the proxy which "advised investors that Fuel Credits would be used to reduce the Company's tax liability, dollar for dollar" and "substantially, if not completely, reduce[]" defendant's tax liability. Pls.' Mem. at 1, 7, 11.  However, the proxy includes no such statements.  On the topic of using the synthetic fuel credits, the proxy stops at the unremarkable observation that "[defendant] will utilize [synthetic fuel credits], if any, by applying them as a credit against its federal income tax liability." Proxy Statement at 24.  With or without disclosure of the AMT, this statement is not misleading.

   Because the Court finds that plaintiffs have failed to state a claim under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, it follows that no cause of action has been stated under section 20(a). See Rombach, 355 F.3d at 177-78 (2d Cir. 2004).  Since the plaintiffs have failed to indicate in any

**APPEARANCES**


GOODKIND LABATON RUDOFF & SUCHAROW LLP
Attorneys for Lead Plaintiff and Gerber
Asset Management, LLC
100 Park Avenue
New York, NY 10017

    EDWARD LABATON, ESQ.
    SHELDON RUDOFF, ESQ.
    IRA A. SCHOCHET, ESQ.
    ZACHARY M. RATZMAN, ESQ.
    JON ADAMS, ESQ.

        Of Counsel


SQUITIERI & FEARON, LLP
Attorneys for Plaintiffs Stanley Fried,
Raymond X. Talamantes, and Jacquelin S.
Talamantes
32 East 57th Street, 12th Floor
New York, NY 10022

    LEE SQUITIERI, ESQ.
    DANIEL R. LAPINSKI, ESQ.

        Of Counsel


LAW OFFICES OF CHARLES J. PIVEN
Attorneys for Plaintiffs Stanley Fried,
Raymond X. Talamantes, and Jacquelin S.
Talamantes
The World Trade Center
401 E. Pratt Street, Suite 2525
Baltimore, MD 21202

    CHARLES J. PIVEN, ESQ.

        Of Counsel

HUNTON & WILLIAMS LLP
Attorneys for Defendants
200 Park Avenue, 43rd Floor
New York, NY 10166

    JOSEPH J. SALTARELLI, ESQ.
    TERENCE J. RASMUSSEN, ESQ.

    Of Counsel


HUNTON & WILLIAMS LLP
Attorneys for Defendants
951 E. Byrd Street
Riverfront Plaza, East Tower
Richmond, VA 23219

    EDWARD J. FUHR, ESQ.

    Of Counsel

way that these defects can be cured by an amended complaint, plaintiffs' request for leave to replead, Pls.' Mem. at 24 n.17, is denied. See H&R Block, Inc., 2004 U.S. Dist. LEXIS 14522, at *42; Tr., dated Nov. 15, 2004, at 24.

Pursuant to the obligation imposed by 15 U.S.C. § 78u-4(c)(1), this Court finds that all parties and attorneys have complied with the requirements of Rule 11(b) of the Federal Rules of Civil Procedure.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss plaintiffs' Complaint shall be and hereby is granted. The Court directs the Clerk of the Court to enter judgment dismissing the Complaint and closing this case.

**It is SO ORDERED.**

Dated:   New York, New York
         May ___, 2005

                                              _____
                                              John E. Sprizzo
                                              United States District Judge

7